IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DOROTHY D. MYERS, <u>et</u> <u>al</u>., | : | HON. JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil No. 05-4608 (JBS) |
| v. | : | |
| MEDQUIST, INC., <u>et</u> <u>al</u>., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Donna Siegel Moffa, Esq.
TRUJILLO, RODRIGUEZ & RICHARDS, LLC
8 Kings Highway West
Haddonfield, NJ 08033
        -and-
Melanie C. Eyre, Esq.
Steven A. Miller, Esq.
DREW, ECKLE & FARNHAM, LLP
P.O. Box 7600
Atlanta, GA 30357-0600
        -and-
Donald L. Perelman, Esq.
FINE KAPLAN & BLACK, R.P.C.
1835 Market Street, Suite 2800
Philadelphia, PA 19103
        -and-
Laura Feldman, Esq.
FELDMAN & PINTO
1604 Locust Street
Philadelphia, PA 19103
        Attorneys for Plaintiffs

Marc J. Gross, Esq.
Olivier Salvagno, Esq.
GREENBAUM, ROWE, SMITH & DAVIS LLP
6 Becker Farm Road
Roseland, NJ 07068
        -and-

Neal R. Marder, Esq.
Gail J. Standich, Esq.
Peter E. Perkowski, Esq.
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071
  Attorneys for Defendants MedQuist Inc. and MedQuist
  Transcriptions, Ltd.


**SIMANDLE**, District Judge:

I. BACKGROUND. . . . . . . . . . . . . . . . . . . . . . 4

  A. **The Parties**. . . . . . . . . . . . . . . . . . . . 4


II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . 9


III. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . 10

  A. Whether Plaintiffs Can Maintain this Suit as a Class
   Action. . . . . . . . . . . . . . . . . . . . . . 10

  B. Whether Plaintiffs' Breach of Contract and Breach of
   the Covenant of Good Faith and Fair Dealing Claims are
   Properly Pled (Counts I and II). . . . . . . . . . 16


VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . 25

  This matter is before the Court upon the motion to dismiss

the Consolidated Amended Complaint under Rule 12(b)(6), Fed. R.

Civ. P., by Defendants MedQuist Inc. ("MedQuist, Inc.") and

MedQuist Transcriptions, Ltd. ("Transcriptions")[1] [Docket Item 17].  Plaintiffs[2] are current and former medical transcriptionists who brought this action as a putative class action on behalf of medical transcriptionists that worked for MedQuist.  According to Plaintiffs, MedQuist hatched a scheme to cheat both MedQuist customers and its transcriptionists employees in which MedQuist manipulated its computer programs so that transcriptionists would be systematically underpaid, while at the same time, MedQuist customers would be systematically overcharged for their transcription services.  Plaintiffs' current action seeks redress for the systematic underpayment of MedQuist transcriptionists by alleging claims of (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) unjust enrichment.  Plaintiffs also seek from MedQuist an accounting of the compensation withheld from the Plaintiffs.

In this motion to dismiss, MedQuist argues that Plaintiffs' class allegations are unsustainable under Rule 23, Fed. R. Civ. P. and should be dismissed.  Next, MedQuist argues that Plaintiffs have failed to state a claim for breach of contract.  Finally, MedQuist argues that Plaintiffs' claims for certain equitable relief (such as an accounting and unjust enrichment)

---

[1]  MedQuist, Inc. and Transcriptions collectively shall be referred to as "MedQuist."

[2]  Plaintiffs are Dorothy Myers, Wendy Svoboda, Carol Force, Brigette Hoffman, Wanda Taylor and Lucas Minister.

are improperly pled and must be dismissed.  For the reasons set forth in this Opinion, the Court will deny MedQuists' motion to dismiss in its entirety.

I.   **BACKGROUND**

    A.   **The Parties**

Plaintiffs are individuals who are either current MedQuist medical transcriptionists or worked as medical transcriptionists for MedQuist either as employees or independent contractors from at least November 29, 1998 through July 30, 2004.  (Consolidated Amended Complaint ("CAC") ¶ 1.)  MedQuist is the largest provider of medical transcription services in the United States, employing over 8,600 medical transcriptionists serving approximately 3,000 clients (primarily hospitals) nationwide.  (Id. at ¶ 12.) MedQuist Transcriptions, Ltd. ("Transcriptions") is a wholly-owned subsidiary of and is totally controlled by MedQuist, Inc. ("MedQuist, Inc.")  (Id. at ¶ 11.)

    B.   **The Underlying Facts**

Medical transcription entails the conversion of voice information dictated by health care professionals into an electronic format or written report.  (CAC at ¶ 18.)  Dictation is forwarded electronically to a MedQuist transcriptionist who pulls up a computer template for the particular type of report or account and transcribes the medical report.  (CAC at ¶ 19.)  The report is then transmitted electronically to MedQuist's computer

4

system for client billing and payroll.  (Id.)  Although the transcription technology employed by MedQuist has changed over the years, the basis for its payment of medical transcriptionists has not.  (Id. at ¶ 20.)  Transcriptionists are paid according to the number of "lines" they transcribe, and MedQuist agreed that a line would consist of 65 "characters."  (Id. at ¶ 21.)  Under the agreements the transcriptionists had with MedQuist, "characters" were defined as all characters typed by a transcriptionists and appearing in a document, including blank spaces between words and the actual character count of words generated by macros and expanders.  (Id. at ¶ 24-26, 28-29, 31.)[3]  For transcriptionists payroll purposes, the line count was to be determined by accurately counting the total number of characters and dividing by 65.  According to Plaintiffs, MedQuist repeatedly affirmed its agreement to pay transcriptionists based on the 65-character line count (with such statements being made by officers of MedQuist, on MedQuist's web site, and through representations made by MedQuist when it acquired a new business.)  (Id. at ¶ 29, 31.)

According to Plaintiffs, such representations and assurances were false.  (Id. ¶ 33.) Despite agreeing to pay transcriptionists based on a 65-character defined line, MedQuist systematically undercounted its transcriptionists' output and

_____

[3]  According to Plaintiffs, the 65 character line was for all relevant times the industry standard and was the agreed upon basis of payment by MedQuist to its transcriptionists.

manipulated the number of characters and/or lines used to calculate payments to transcriptionists.  (Id.)[4]  According to Plaintiffs, to effectuate their scheme, MedQuist manipulated the MedQuist computer systems used for billing and payroll purposes and falsified line counts to achieve a 2:1 or even 3:1 billing-to-payroll ratio.  (Id. at ¶ 37.)

Plaintiffs also allege that, after Plaintiffs became suspicious that MedQuist was not properly accounting for their services, MedQuist "used systems that made it difficult or impossible for Plaintiffs . . . to discover [MedQuist's] wrongdoing."  (Id. at ¶ 44.)  As such, the Plaintiffs "were unable to determine if they had been underpaid . . . ."  (Id. at ¶ 44.)

**C.  Class Action Allegation**

In their Consolidated Amended Complaint, Plaintiffs spell out their class action allegations.  Plaintiffs bring this action as a class action pursuant to Rules 23(a)[5] and (b)(3)[6], Fed. R.

---

[4]  Plaintiffs state that MedQuist did such actions because they were "motivated by the wrongful desire to increase profits at the expense of Plaintiffs and the Class."  (CAC at ¶ 35.)

[5]  Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

Civ. P. on behalf of themselves and others who worked as medical transcriptionists from at least November 29, 1998 to July 30, 2004.  (CAC at ¶ 54.)  According to Plaintiffs, the members of the class are so numerous that joinder of all members is impracticable as the class may consist of more than 8,600 current and former transcriptionists throughout the United States.  (Id. at ¶ 55.)  Plaintiffs also allege that there are common questions of law and fact (id. at ¶ 56), Plaintiffs' claims are typical of the claims of members of the class (id. at ¶ 57), and that Plaintiffs will fairly and adequately protect the interests of the members of the class.  (Id. at ¶ 58.)

**D.   Procedural History**

This case is a consolidated action stemming from three separate actions filed against MedQuist.  The first two actions (Hoffman v. MedQuist and Meyers v. MedQuist) were consolidated

_____

class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

[6]   Rule 23(b)(3) provides an action may be maintained as a class action if the prerequisites of Fed. R. Civ. P. 23(a) are satisfied and in addition:

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

under Civil Action No. 05-4608 in this Court pursuant to a consolidation order dated January 12, 2006.[7]   [Docket Item No. 5.]   The Plaintiffs then filed a Consolidated Amended Complaint on January 31, 2006 also naming Carol T. Force as a plaintiff (Civil Action No. 06-870).   On April 4, 2006, the parties entered into a stipulation and consent order whereby Force v. MedQuist was consolidated with Civil Action No. 05-4608 and the parties agreed that the Consolidated Amended Complaint supercedes the original complaint. [Docket Item No. 20.]   MedQuist filed this motion to dismiss.   [Docket Item No. 17.]   Plaintiffs filed opposition.   [Docket Item No. 21] to which MedQuist replied. [Docket Item No. 22.]   This Court heard oral argument on MedQuist's motion on August 7, 2006.

The CAC contains four claims.   First, Plaintiffs allege that MedQuist breached its contract with Plaintiffs by failing to pay Plaintiffs in accordance with a 65-character line.   (Count I, CAC ¶ 60-65.)   Second, Plaintiffs claim that MedQuist breached the covenant of good faith and fair dealing by failing to conduct itself honestly and fairly in regard to the performance of its contracts with transcriptionists.   (Count II, Id. ¶ 66-70.) Third, Plaintiffs claims for accounting (demanding that MedQuist

---

[7]   Specifically, Hoffman v. MedQuist (Civil Action No. 05-5567) was originally filed in the Northern District of Georgia but was transferred to this Court on November 28, 2005.   Myers v. MedQuist (Civil Action No. 05-4608) was filed with this Court on September 22, 2005

reveal their complete corporate records regarding the compensation withheld from Plaintiffs) and unjust enrichment (relating to the value of the benefits MedQuist unjustly derived from the scheme to undercount lines of transcriptionists production) against MedQuist).  (Counts III and IV, Id. ¶ 71-72 and 73-76.)

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts and must view all allegations in the complaint in the light most favorable to the plaintiff.  See Scheuer, 416 U.S. at 236; Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A., 761 F. Supp. 1100, 1107 (D.N.J. 1991).

In his complaint, it is not necessary for the plaintiff to plead evidence, and it is not necessary to plead the facts that serve as the basis for the claim.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  When a motion to dismiss is before the court, the question for the court is not whether plaintiff will ultimately prevail; rather, it is whether

he or she can prove any set of facts in support of their claims that would entitle them to relief.  <u>See</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  Therefore, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990).[8]

## III.  DISCUSSION

### A.  <u>Whether Plaintiffs Can Maintain this Suit as a Class Action</u>

MedQuist first questions whether Plaintiffs can maintain this suit as a class action.  Specifically, MedQuist argues that the facts Plaintiffs allege in the CAC demonstrate that individual issues predominate over any common issues of law or fact.  As such, Plaintiffs cannot maintain this suit as a class action as a matter of law and therefore the CAC must be dismissed.

---

[8]  While the court is required to take all of the allegations of fact as true, the court is "not required to credit bald assertions or legal conclusions alleged in the complaint." <u>Jones v. Intelli-Check, Inc.</u>, 274 F. Supp. 2d 615, 625 (D.N.J. 2003).

According to MedQuist, the issue of whether class allegations are sufficient can be resolved on a motion to dismiss.  See General Tele. Co. v. Falcon, 457 U.S. 147, 160 (1982)("[S]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ."); Fed. R. Civ. P. 23(d)(4)(courts can order "that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly.")  Thus, MedQuist contends that this Court need not wait for a class certification motion to adjudicate class issues in instances -- as here, -- where a court can decide such issues by looking at the facts of the complaint.  According to MedQuist, other courts in the District of New Jersey have dismissed class allegations at the pleading stage for lack of commonality and predominance.  See Rowe v. Morgan Stanley Dean Witter, 191 F.R.D. 398 (D.N.J. 1999)(the court granted defendant's motion to dismiss the class allegations holding that the claims required individualized, fact-intensive inquiries which precluded class certification.)

Resolving Plaintiffs' claims in the CAC, according to MedQuist, will require individualized inquiries into the facts surrounding each transcriptionists' situation and thus, are not suitable for class treatment.  (Def.'s Br. at 6.)  Moreover,

11

according to MedQuist, a breach of contract dispute is
"inamenable to resolution through a class action." Moore Video
Distrib., Inc. v. Quest Entm't, Inc., 823 F. Supp. 1332, 1339
(S.D. Miss. 1993)("Individual and differing contract claims even
if emanating from a single defendant are rarely appropriate
candidates for class certification.")[9]  This is especially true,
according to MedQuist, when, as here, the alleged contracts are
not in the written form.  (Def.'s Br. at 8.)

        Plaintiffs counter by arguing that MedQuist's motion to
dismiss is not the proper vehicle -- either generally or in this
case -- for deciding class certification.  Plaintiffs point out
that other courts in this District have held that dismissal of
class action allegations is only appropriate "in those rare cases
where the complaint itself demonstrates that the requirements for
maintaining a class action cannot be met." Strzakowlski v.
General Motors Corp., No. 04-4740, 2005 U.S. Dist. LEXIS 18111,
*26 (D.N.J. Aug. 16, 2005).  Instead, putative class plaintiffs
are entitled to develop their claims (class or otherwise) through
discovery.

        This Court will deny MedQuist's motion to dismiss
Plaintiffs' class allegations at this stage in the litigation.

_____

        [9]  See also Ramirez v. DeCoster, 194 F.R.D. 348, 355 (D. Me.
2000)("contract claims are, by definition, fact-specific to each
individual, for in each instance the trier of fact must determine
whether there was a promise, a contract, and if so, what its
terms were and whether it was breached.")

Rule 23(c)(1), Fed. R. Civ. P., which governs certification of class actions, states that "[w]hen a person sues . . . as a representative of a class, the court must -- *at an early practicable time* -- determine by order whether to certify the action as a class action."  Thus, MedQuist is correct that a district court may strike class action allegations prior to discovery when presented with Rule 12(b)(6) motion.  See Clark v. McDonald's Corp., 213 F.R.D. 198, 205 n.3 (D.N.J. 2003). However, other decisions in this District teach that a dismissal of class certification allegations should be ordered only "in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  Id. (citations omitted); Strzakowlski, 2005 U.S. Dist. LEXIS 18111 at *26; In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 338 (D.N.J. 1997).

Dismissal at this stage in the litigation would not allow Plaintiffs to fully develop their claims through discovery. Indeed, the usual practice favoring pre-certification discovery derives from the fundamental premise of Rule 12, Fed. R. Civ. P., which is that claims, including class claims, should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Decisions from our sister courts (and courts

in a number of other jurisdictions) have made clear that
dismissal of class allegations at this state should be done
rarely and that the better course is to deny such a motion
because "the shape and form of a class action evolves only
through the process of discovery." Gutierrez v. Johnson &
Johnson, Inc., No. 01-5302, 2002 U.S. Dist. LEXIS 15418, *16
(D.N.J. 2002)(citing Abdallah v. Coca-Cola Co., 1999 U.S. Dist.
LEXIS 23211 (D. Ga. July 16, 1999)); see also 7AA Wright, Miller
& Kane, Federal Practice and Procedure Civil 3d § 1785.3 (the
practice employed in the overwhelming majority of class actions
is to resolve class certification only after an appropriate
period of discovery.)

    Indeed, while it is the plaintiff's burden to prove that the
proposed class action satisfies each of the required elements of
Rule 23(a) and one of the prerequisites of Rule 23(b), see Baby
Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994), the "court may find
it necessary . . . to analyze the elements of the parties'
substantive claims and review facts revealed in discovery in
order to evaluate whether the requirements of Rule 23 have been
satisfied." In re Ford Motor Ignition Switch Prods. Liab.
Litig., 174 F.R.D. at 338 (citing Castano v. Am. Tobacco Co., 84
F.3d 734, 744 (5th Cir. 1996)). Moreover, "[a]s a practical
mater, the court's [certification decision] usually should be
predicated on more information than the complaint itself affords

14

. . . [and] [t]hus, courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis." 5C Wright, Miller & Kane, <u>Federal Practice & Procedure Civil</u> 3d § 1785.3.

As such, dismissal of Plaintiffs' class action allegations at this point would be premature. At this stage in the proceedings, this Court finds that Plaintiffs have pled sufficient facts to satisfy Rule 23(a) and (b) and, as such, the Court will address Plaintiffs' class action certification on a motion for class certification made under Rule 23(c) after Plaintiffs are given the opportunity to conduct discovery on class action status.[10]

---

[10] The Court is mindful of arguments raised by MedQuist's counsel at oral argument that challenge Plaintiffs' ability to certify a class in this case. Specifically, counsel raised the fact that MedQuist was a "roll-up" company whose current form is an amalgamation of some 40 acquisitions over several years. As a result, many of the 10,000 transcriptionists worked for autonomous companies and there does not appear to be a form contract between the transcriptionists and MedQuist. Indeed, if MedQuist's assertions are correct, Plaintiffs face challenges to their eventual motion for class certification. At this stage, the district court, when reviewing the sufficiency of a complaint has a limited role. <u>See</u> <u>Rowe v. Morgan Stanley Dean Witter</u>, 191 F.R.D. 398, 405 (D.N.J. 1999). Here, Plaintiffs have pled that they have a "uniform contract term" (i.e., the 65-character line), that there are common questions of law and fact as to all members of the class, and Plaintiffs' claims are typical of the claims of the members of the class. Thus, this Court will not dismiss Plaintiffs' class action allegations without allowing Plaintiffs to conduct discovery to meet the challenges raised by MedQuist.

**B.     Whether Plaintiffs' Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing Claims are Properly Pled (Counts I and II)**

MedQuist next argues that this Court should dismiss Plaintiffs' breach of contract and breach of covenant claims because Plaintiffs' CAC does not comply with the pleading requirements of Rule 8(a), Fed. R. Civ. P.[11]   Specifically, MedQuist contends that Plaintiffs have failed to allege either (1) the actual parties to the various contracts at issue (i.e., MedQuist or Transcriptions) or (2) the essential terms of any contract that Plaintiffs alleged was breached.  According to MedQuist, Plaintiffs are required to plead both the actual parties and essential contractual terms under New Jersey law.  See Video Pipeline, Inc., 210 F. Supp. 2d at 561 (to plead a valid breach of contract action, plaintiff must plead (1) a contract, including its parties and essential terms; (2) a breach; (3) damages; and (4) that plaintiff performed its own obligations.)  MedQuist also argues that, should the Court not

―――――――――――

[11]   Rule 8(a) states, in pertinent part:

A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. P. 8(a).

16

dismiss Plaintiffs' breach of contract and breach of covenant claims, MedQuist is at least entitled to a more definite statement under Rule 12(e), Fed. R. Civ. P.

### 1.   MedQuists' Motion to Dismiss Counts I and II

MedQuist first argues that the CAC does not comply with Rule 8(a) because Plaintiffs have failed to plead the actual parties to the various contracts Plaintiffs alleged were breached. Specifically, MedQuist contends that Plaintiffs assert all allegations in the CAC against "MedQuist," a term that Plaintiffs define as including two separate and distinct legal entities: MedQuist, Inc. and Transcriptions.  Such allegations, according to MedQuist, are improper in a contract claim where Plaintiffs must identify which entities agreed to what.  See Kirschner v. Cable/Tel Corp., 576 F. Supp. 234, 244-45 (E.D. Pa. 1983) (dismissing contract claim when allegations did not clearly identify parties to the contract).

Second, MedQuist contends that Plaintiffs' claims fail because Plaintiffs have not identified, with certainty, the essential terms of the contract.  (Pl.'s Br. at 16.)   MedQuist's argument centers on the fact that Plaintiffs allege that MedQuist agreed to pay transcriptionists on a 65-character line, but the ambiguity in the CAC as to the definition of "character" renders indefinite the essential term of the contract.  According to MedQuist, Plaintiffs have alleged several conflicting definitions

of the term "character."  This failure, coupled with Plaintiffs'

failure to plead the actual parties to the contracts, suggest

that MedQuist was not given fair notice of what Plaintiffs'

claims are and therefore, these claims must be dismissed.  <u>See</u>

<u>Conley</u>, 355 U.S. at 57; <u>see</u> <u>also</u> <u>Mruz v. Caring, Inc.</u>, 991 F.

Supp. 701, 721 (D.N.J. 1998)(dismissing breach of contract claim

under Rule 8 and 12(b)(6) when allegations were unclear and

failed to provide defendant with sufficient notice.)

Plaintiffs counter by emphasizing that Rule 8(a) of the

Federal Rules of Civil Procedure requires only notice pleadings

which "merely requires a 'short and plain statement of the claim

showing that the pleader is entitled to relief.'"  <u>In re Suprema</u>

<u>Specialties, Inc. Sec. Litig.</u>, 438 F.3d 256, 270 (3d Cir. 2006).

Under these standards, Plaintiffs argue, the CAC satisfies Rule

8(a).

Rule 8(a) is a lenient standard, requiring only that a

plaintiff in a breach of contract case provide a "short and plain

statement of the claim showing that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2).  In interpreting Rule 8, the

Supreme Court has made clear that Rule 8(a) does not demand fact

pleading nor that Plaintiffs' legal theories be set out in

particularity.  <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 512

(2002); <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 428-30 (3d Cir.

2001).  Instead, Rule 8 requires only that the complaint "provide

fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id.

Under this lenient standard, it is clear that dismissal under Fed. R. Civ. P. 12(b)(6) would be inappropriate in the present case as Plaintiffs' CAC properly states claims for both breach of contract and breach of covenant and provides adequate notice of these claims to MedQuist. Specifically, Count I of the CAC, which contains Plaintiffs' breach of contract claim, states (1) an allegation that the representative plaintiffs entered into contracts with MedQuist for the provision of medical transcription services (CAC ¶¶ 7-8, 11, 24, 26); (2) that MedQuist systematically breached this obligation (CAC ¶ 33) and (3) that Plaintiffs and the class were injured as a result of such breach (CAC ¶ 46.) Such allegations, taken in the light most favorable to Plaintiffs are sufficient to give MedQuist fair notice of the claims against them.

MedQuist's argument that the CAC should be dismissed because Plaintiffs fail to name the actual parties to the contracts is unpersuasive. Plaintiffs have in fact pled two "actual parties" to the contracts (MedQuist, Inc. and Transcriptions) and have alleged that one or both of the entities contracted with Plaintiffs. Given the corporate affiliation between them, such pleadings are sufficient to put MedQuist on fair notice of the

allegations against them and satisfies the "simplified notice

pleading standard" of Rule 8.  Swierkiewicz, 534 U.S. at 512.[12]

In addition, the Court finds MedQuist's argument that

Plaintiffs have failed to clearly identify its contract claim

equally unavailing.  Plaintiffs allege that MedQuist breached its

promise to pay the transcriptionists on the 65-character line

method.  Plaintiffs' pleadings here are sufficient to put

MedQuist on notice of the contract claims alleged against them.

This is particularly true in light of case law that holds that

"specifics of the contract, such as the date it was formed and

specifics of the contract's terms and transactions made under the

contract, need not be pled."  61 Am. Jur. 2d Pleadings § 212

(Aug. 2005)(citing In re Catanella and E.F. Hutton and Co., Inc.

Sec. Litig., 583 F. Supp. 1388 (E.D. Pa. 1984)).

### 2.   MedQuist's Motion for a More Definite Statement

MedQuist argues that, if the Court does not dismiss

Plaintiffs' breach of contract claim, MedQuist is entitled to a

more definite statement under Rule 12(e), Fed. R. Civ. P because

---

[12]  Moreover, the Court finds that MedQuist's reliance on
Kirschner is unpersuasive because that case is distinguishable
from the present case.  In Kirschner, the plaintiff pled a claim
of breach of contract against 18 separate defendants.  Kirschner,
576 F. Supp. at 237.  The plaintiff failed to identify which
of the defendants were parties to which contracts.  Id.  This
case is markedly different as it was brought against only two
defendants and they have a parent-subsidiary relationship.  In
this case, both parent and subsidiary are accused of the same
conduct - breaching uniform contract terms of paying
transcriptionist on 65-character defined line count.

Plaintiffs' "contract-based claims are impossibly vague." (Def.'s
Br. at 18.)  MedQuist contends that Plaintiffs do not allege "a
clear consistent and intelligible definition of character,
instead offering numerous and varying descriptions in the CAC."
(Def.'s Br. at 19.)  As a consequence of these ambiguities,
MedQuist agues that it "can neither admit nor in good faith deny
the Plaintiffs' allegations without a more definite statement of
their claims."  (Id.)

    Rule 12(e) allows a party to file a motion for a more
definite statement "[i]f a pleading . . . is so vague or
ambiguous that a party cannot reasonably be required to frame a
responsive pleading . . . ."  Fed. R. Civ. P. 12(e).  Courts in
this District have held, by in large, that "[m]otions for a more
definite statement are disfavored, and are generally limited to
remedying unintelligible, rather than insufficiently detailed,
pleadings."  Briley v. City of Trenton, 164 F.R.D. 26, 30 (D.N.J.
1995).  Rather than vagueness of certain pleadings, "[t]he basis
for granting [a Rule 12(e)] motion is unintelligibility" and that
the complaint will be deemed sufficient for purposes of Rule
12(e) so long as a defendant "is able to respond, even if only
with a 'simple denial, in good faith and without prejudice' . . .
."  Wood & Locker, Inc. v. Doran & Assocs., 708 F. Supp. 684, 691
(W.D. Pa. 1989)(citation omitted); K-Tronik N.A., Inc. v.
Vossloh-Schwabe Matsushita, No. 06-0729, 2006 U.S. Dist. LEXIS

28265, *12-13 (D.N.J. May 8, 2006).  As discussed above,
Plaintiffs' allegations include many specifics, including a
detailed description of MedQuist's contracts with Plaintiffs (CAC
¶¶ 24-32), MedQuist's improper compensation practices (including
the role of senior management in the alleged scheme and an
example of a report where MedQuist reduced a medical
transcriptionists's line count) (CAC ¶¶ 33-46), and a detailed
description of the breach of contract and breach of covenant
claims (CAC ¶¶ 60-70.)  Such allegations are not so vague that
MedQuist cannot, in good faith and without prejudice, frame a
responsive pleading.  As such, MedQuist's motion for a more
definite statement will be denied.


### C.    **Whether Plaintiffs' Equitable Claims are Barred**

#### 1.    **Plaintiffs' Claim for Unjust Enrichment (Count IV)**

According to MedQuist, Plaintiffs, who have pled that every
transcriptionist entered into a valid contract with MedQuist,
cannot maintain a claim for unjust enrichment because the
existence of a valid contract between plaintiff and defendant
precludes such a claim absent a rescission.  See Moser v. Milner
Hotels, Inc., 6 N.J. 278, 280 (1951)("An implied contract cannot
exist when there is an existing express contract about the
identical subject.")  Thus, MedQuist argues, under Moser, the

22

existence of an express contract precludes the quasi-contractual relief Plaintiffs request.  See Feldman v. U.S. Sprint Commc'ns Co., 714 F. Supp. 727, 732 (D.N.J. 1989).

MedQuist is incorrect that, at the motion to dismiss stage, a plaintiff cannot maintain a claim for unjust enrichment while at the same time pleading that a valid contract existed between a plaintiff and defendant.[13]  To the contrary, Rule 8(e)(2), Fed. R. Civ. P., specifically allows a plaintiff to plead in the alternative and allege parallel theories of recovery.  See Fed. R. Civ. P. 8(e)(2)(a "party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses," and that a "party may state as many separate claims or defenses as the party has regardless or consistency and whether based on legal [or] equitable" grounds.)  Other courts in this District have ruled similarly, holding that a breach of contract and unjust enrichment claim may be alleged simultaneously.  See In re K-Dur Antitrust Litig., 338 F. Supp.2d 517, 544 (D.N.J. 2004)(plaintiffs "are clearly permitted to plead alternative theories of recovery," including unjust enrichment and parallel remedies at law); see also U.S. v. Kensington Hosp., 760 F. Supp. 1120, 1135 (E.D. Pa. 1991)(finding dismissal of unjust enrichment

---

[13]  To this end, the Court notes that Feldman which is cited by Plaintiffs was decided upon a motion for summary judgment, not a motion to dismiss.  See 714 F. Supp. 727, 728 (D.N.J. 1989)

claim premature where federal rules allow pleading alternative theories of recovery); <u>Callaway Golf Co. v. Dunlop Slazenger Group Ams., Inc.</u>, 295 F. Supp.2d 430, 437 (D. Del. 2003)(finding that even if unjust enrichment claim was preempted by plaintiff's alleged federal causes of action, claim would stand as an alternative basis of recovery). As such, MedQuist's motion to dismiss Count IV will be denied.

### 2. Plaintiffs' Claim for an Accounting (Count III)

MedQuist next argues that Plaintiffs cannot maintain their claim for an equitable accounting because, as with all equitable claims, equitable relief is unavailable if an adequate remedy at law is available. <u>Messina v. Nat'l Store Co.</u>, 140 N.J. Eq. 312 (Ch. Div. 1947). Rather, Plaintiffs "must show that [their] remedy at law in fact is inadequate, and not merely that such remedy in the end turns out to be inadequate." <u>Daab v. New York Cent. & H.R.R. Co.</u>, 70 N.J. Eq. 489, 497 (Ch. 1905). According to MedQuist, Plaintiffs have not alleged and cannot allege, that their legal remedy is inadequate. (Def.'s Br. at 21.)

At this stage in the litigation, this Court will allow Plaintiffs' equitable claims to go forward. Plaintiffs are simply taking advantage of the fact that Rule 8(e)(2), Fed. R. Civ. P. allows a plaintiff to plead in the alternative. <u>Id.</u> As described in Section II.C.1 <u>supra</u>, recent case law from this District, namely <u>In re K-Dur Antitrust Litig.</u>, 338 F. Supp.2d at

544, has reiterated this point.  Thus, MedQuist's motion to dismiss Plaintiffs' accounting claim will be denied.

**VI.  CONCLUSION**

For the reasons expressed in this Opinion, the Court will deny MedQuist's motion to dismiss.  MedQuist's motion to dismiss Plaintiffs' class allegations is premature and this Court will not entertain a challenge to Plaintiffs' class certification until Plaintiffs have had the opportunity to conduct at least limited discovery as to the issues surrounding class certification.  Second, the Court finds that Plaintiffs have adequately pled both claims of breach of contract and breach of covenant.  Finally, Plaintiffs, at this stage in the proceedings, may bring both claims in equity (unjust enrichment and accounting) and law (breach of contract and breach of covenant) as Rule 8(e) of the Fed. R. Civ. P. specifically allows a plaintiff to plead in the alternative.

The accompanying Order will be entered.


**December 20, 2006**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         U.S. District Court